IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 14-cv-01538-PAB-CBS

ARLETTE CLARKE and
DYLAN CLARKE,

    Plaintiffs,

v.

NATIONAL PAYMENT RELIEF, LLC,

    Defendant.

_____

**ORDER**
_____

This matter comes before the Court on plaintiffs' Motion for Default Judgment against defendant National Payment Relief, LLC ("National"). [Docket No. 14]. The Court has jurisdiction pursuant to 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1337.

**I. BACKGROUND**

Because of the Clerk of Court's entry of default, Docket No. 12, the allegations in plaintiffs' complaint, Docket No. 1, are deemed admitted. *Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1125 (10th Cir. 2003).

Plaintiffs bring a claim for relief for violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*[1]  Though served with the complaint and summons, National did not answer or otherwise respond to plaintiff's complaint.

---

[1] Plaintiffs initially brought suit against National and another defendant, Partners for Payment Relief, DE, LLC ("Partners"). Plaintiffs voluntarily dismissed their claims against Partners on October 17, 2014. Docket No. 15. This order recites only those facts necessary to resolve plaintiffs' default judgment motion against National.

Accordingly, the Clerk of Court entered default against National on July 22, 2014. Docket No. 12.

In 2005, plaintiffs refinanced their home via two sub-prime mortgages (the "first mortgage" and "second mortgage").  Docket No. 1 at 3, ¶ 17.  Plaintiffs became unable to make payments on their mortgages and reached a modification agreement with their mortgage servicer.  *Id.*  Under the agreement, plaintiffs made modified payments on the first mortgage and were no longer responsible for making payments on the second mortgage.  *Id.*

In September 2012, the second mortgage was assigned to Partners.  Docket No. 1 at 3, ¶ 20.  According to plaintiff, both National and Partners (collectively referred to in the complaint as the "Debt Collectors") then engaged in a "shock-and-awe" campaign to attempt to collect on plaintiffs' second mortgage.  *Id.* at 5, ¶ 34.  This campaign involved a mail notice, phone calls every two to three days, an unannounced personal visit from a private investigator, and a threat of foreclosure on plaintiffs' home.  *Id.*  As part of this campaign, the Debt Collectors discussed the mortgage with plaintiffs' daughters.  *Id.* ¶ 38.  Neither debt collector was registered as a licensed collection agency with the state of Colorado.  *Id.* ¶ 41.

On an unspecified date, National hand-delivered a notice to plaintiffs.  Docket No. 1 at 5, ¶ 42; *see also* Docket No. 1-2.  The notice provided that, unless plaintiffs notified National within 15 days, National would assume that plaintiffs' debt was valid. Docket No. 1-2 at 2.  Plaintiffs allege that the individual who hand-delivered the notice was "threatening, rude, oppressive, and abusive" and spoke to plaintiffs' teenage

2

daughters about plaintiffs' debt. Docket No. 1 at 6, ¶¶ 46-47. The actions of the debt collector working on behalf of National caused plaintiffs to contact the police and attorney general. *Id.* ¶ 48.

## II. ANALYSIS

### A. Default Judgment

In order to obtain a judgment by default, a party must follow the two-step process described in Fed. R. Civ. P. 55. First, the party must seek an entry of default from the Clerk of the Court under Rule 55(a). Second, after default has been entered by the Clerk, the party must seek judgment under the strictures of Rule 55(b). *See Williams v. Smithson*, 1995 WL 365988, at *1 (10th Cir. June 20, 1995) (citing *Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981)).

The decision to enter default judgment is "'committed to the district court's sound discretion." *Olcott*, 327 F.3d at 1124 (citation omitted). In exercising that discretion, the Court considers that "[s]trong policies favor resolution of disputes on their merits." *Ruplinger v. Rains*, 946 F.2d 731, 732 (10th Cir. 1991) (quotation and citations omitted). "The default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party." *Id.* It serves to protect plaintiffs against "interminable delay and continued uncertainty as to his rights." *Id.* at 733. When "ruling on a motion for default judgment, the court may rely on detailed affidavits or documentary evidence to determine the appropriate sum for the default judgment." *Seme v. E&H Prof'l Sec. Co., Inc.*, No. 08-cv-01569-RPM-KMT, 2010 WL 1553786, at *11 (D. Colo. Mar. 19, 2010).

A party may not simply sit out the litigation without consequence. *See Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1444-45 (10th Cir. 1983) ("[A] workable system of justice requires that litigants not be free to appear at their pleasure. We therefore must hold parties and their attorneys to a reasonably high standard of diligence in observing the courts' rules of procedure. The threat of judgment by default serves as an incentive to meet this standard"). One such consequence is that, upon the entry of default against a defendant, the well-pleaded allegations in the complaint are deemed admitted. *See* Charles Wright, Arthur Miller & Mary Kane, Fed. Prac. & Proc. § 2688 (3d ed. 2010). "Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Id.* at 63. A court need not accept conclusory allegations. *Moffett v. Halliburton Energy Servs., Inc.* 291 F.3d 1227, 1232 (10th Cir. 2002). Although "[s]pecific facts are not necessary" in order to state a claim, *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), the well-pleaded facts must "permit the court to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotation and alteration marks omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (quotation and citation omitted).

While the FDCPA forbids a variety of conduct,

> [t]he substantive heart of the FDCPA lies in three broad prohibitions.  First, a 'debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.'  § 1692d.  Second, a 'debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.'  § 1692e.  Third, a 'debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.' § 1692f.

*Johnson v. Riddle*, 305 F.3d 1107, 1117 (10th Cir. 2002).  To establish a violation of the FDCPA, plaintiffs must show that (1) they are "consumer[s]" within the meaning of 15 U.S.C. § 1692a(3),[2] (2) their debt arises out of a transaction entered into primarily for personal, family, or household purposes, 15 U.S.C. § 1692a(5), (3) defendant is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6),[3] and (4) defendant, through its acts or omissions, violated a provision of the FDCPA.  *See Nikkel v. Wakefield & Assoc., Inc.*, No. 10-cv-02411-PAB-CBS, 2012 WL 5571058 at *10 (D. Colo. Nov. 15, 2012).

The Court finds that the complaint, deemed admitted for the purposes of this motion, sufficiently alleges a violation of the FDCPA.  Plaintiffs allege that they were consumers who incurred the debt at issue for personal, family, or household purposes.  Docket No. 1 at 3, ¶¶ 18-19.  Plaintiffs further allege facts sufficient to infer that National

---

[2] "The term 'consumer' means any natural person obligated or allegedly obligated to pay any debt."  15 U.S.C. § 1692a(3).

[3] "The term 'debt collector' means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).

used an instrumentality of interstate commerce the principal purpose of which was the collection of debts, and that National regularly attempts to collect debts. Docket No. 1-2 at 2; *see also* Docket No. 1 at 2, ¶ 12, 5-6, ¶¶ 42-43.

Plaintiffs allege that National violated the FDCPA by (1) communicating with plaintiffs' daughters regarding the debt in violation of 15 U.S.C. § 1692c(b), Docket No. 1 at 8, ¶ 71, (2) engaging in a "shock and awe" campaign intended to harass, oppress, or abuse plaintiffs in violation of 15 U.S.C. § 1692d, *id.* ¶ 72, (3) attempting to collect a debt when not permitted to do so under Colo. Rev. Stat. § 12-14-115, in violation of 15 U.S.C. 1692e(5), *id.* at 9, ¶ 80, (4) attempting to collect on the second mortgage even though plaintiffs were not responsible for making payments on the mortgage in violation of 15 U.S.C. § 1692f(1), *id.* at 10, ¶ 84, and (5) failing to send a notice compliant with 15 U.S.C. § 1692g and/or engaging in collection activities or communications during the validation period inconsistent with and overshadowing the notice. *Id.* at 11, ¶ 87. The Court finds that plaintiffs have sufficiently alleged that National violated the FDCPA on their first, third, fourth, and fifth theories.

Section 1692c(b) of Title 15 provides that a debt collector cannot communicate "with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector" in connection with collection of the debt. National's communication with plaintiffs' daughters was in violation of this provision. Section 1692e(5) prohibits debt collectors from threatening to "take any action that cannot legally be taken or that is not intended to be taken." According to the admitted allegations of the complaint, National violated this provision by seeking to collect on plaintiffs' debt even though

6

National is not registered as a licensed collection agency with the state of Colorado. Docket No. 1 at 5, ¶ 41; *see also* Colo. Rev. Stat. § 12-14-115(1) (providing that it is unlawful for any person to "[c]onduct the business of a collection agency or advertise or solicit, either in print, by letter, in person, or otherwise, the right to make collection or obtain payment of any debt on behalf of another without having obtained a license under this article"). Section 1692f(1) prohibits the collection of any amount "unless such amount is expressly authorized by the agreement creating the debt or permitted by law." National violated this provision by attempting to collect on a debt that, pursuant to plaintiffs' agreement with their mortgage servicer, plaintiffs no longer owed. Docket No. 1 at 3, ¶ 17. Finally, section 1692g(a) requires that a collector send written notice within five days of an initial communication with a debtor. Among other things, that notice must provide that "if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector," *id.* § 1692g(a)(4), and "a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor." *Id.* § 1692g(a)(5). National violated this provision by misstating the validation period as fifteen days rather than the thirty-day period mandated by statute. Docket No. 1-2 at 2.

Regarding plaintiffs' claim that National violated 15 U.S.C. § 1692d, which prohibits collection tactics intended to harass, oppress, or abuse, the Court finds that plaintiffs' allegations are insufficient. Plaintiffs' complaint describes National and

7

Partners' collection practices generally, which plaintiffs characterize as a "shock and awe" strategy, Docket No. 1 at 5, ¶¶ 34-35, but plaintiffs do not plead sufficient facts to find that National's specific actions towards them were particularly harassing, oppressive, or abusive. Specifically, while plaintiffs allege that the shock and awe campaign involves phone calls "to the consumer every two to three days," *id.* ¶ 34, plaintiffs do not allege the number of phone calls they received or attribute such phone calls to National. Moreover, plaintiffs do not describe any harassing or abusive behavior with particularity. Instead, they plead only the legal conclusion that National's representative was "threatening, rude, oppressive, and abusive" and that the representative's behavior caused plaintiffs to contact the police. *Id.* ¶¶ 46, 48. This is not sufficient detail for the Court to determine that National's actions violated the FDCPA's prohibition of harassing, oppressive, and abusive debt collection tactics.

### B. Statutory Damages

The FDCPA provides for statutory damages in an amount "as the court may allow, but not exceeding $1,000." 15 U.S.C. § 1692k(a)(2)(A). In determining the amount of statutory damages to award, courts are to consider the debt collector's conduct, specifically "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." 15 U.S.C. § 1692k(b)(1).

Courts have denied an award of statutory damages in cases where the violation is isolated, non-threatening, and unintentional. *See, e.g., Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 28 (2d Cir. 1989); *Emanuel v. Am. Credit Exchange*, 870

F.2d 805, 809 (2d Cir. 1989). In other cases, courts have awarded up to the full $1,000 where debt collectors violated the FDCPA by sending one or more letters that did not contain required disclosures or were otherwise false or misleading. *See, e.g., Francis v. Snyder*, 2006 WL 1236052, at *1 (N.D. Ill. May 4, 2006) (awarding $1,000 in statutory damages where debt collector sent letter threatening baseless lawsuit); *Rivera v. Nat'l Check Processing, LLC*, 2011 WL 996340, at *2 (W.D. Tex. Mar. 17, 2011) (awarding $1,000 in statutory damages where the defendant "continuously" called the plaintiff's home and work phones, threatening "to have her arrested, bring charges against her, and to add attorneys' fees to the debt").

The Court finds that plaintiffs' allegations support an award of statutory damages. National's actions in communicating with plaintiffs' teenaged daughters and misrepresenting plaintiffs' rights under the FDCPA support a finding that the violation was intentional. National's actions, however, do not justify the maximum statutory penalty. "[M]aximum statutory damages under 15 U.S.C. § 1692k(a)(2)(A) should be reserved for egregious violations of the FDCPA, for example, cases where the defendant repeatedly uses abusive language, improperly threatens legal action or the use of self-help, or aggressively intrudes on a consumer's home, place of employment, or [peace] of mind." *Lassiter v. Integrity Solution Servs., Inc.*, No. 13-cv-00268-PAB-MJW, 2014 WL 1977216 at *2 (D. Colo. May 15, 2014) (citing *Sterling v. Am. Credit & Collections, LLC*, No. 11-cv-03113-DME-BNB, 2012 WL 3553757, at *4 (D. Colo. Aug. 16, 2012)). Plaintiffs' allegations, which do not specify the frequency of National's collection attempts or the details of the allegedly abusive or threatening behavior, do

not constitute the sort of egregious violation that supports a maximum award. Moreover, the actions of National were the same as to both plaintiffs. Accordingly, the Court finds that an award of $500 for both plaintiffs collectively is appropriate.

### C. Actual Damages

Plaintiffs seek an evidentiary hearing to determine the amount of their actual damages, Docket No. 14 at 2, ¶ 5, and suggest an award of $5,000 in actual damages to each plaintiff. Docket No. 14-1 at 3, ¶ 14. Fed. R. Civ. P. 55(b)(2)(B) permits the Court to hold an evidentiary hearing where the Court needs to determine the amount of damages suffered. In this case, the Court does not find an evidentiary hearing appropriate. Plaintiffs have not alleged any facts that support a finding that they suffered actual damages as a result of National's violations of the FDCPA. *See* Docket No.1.

## III. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that plaintiffs Arlette Clarke and Dylan Clarke's Motion for Default Judgment against defendant National Payment Relief, LLC [Docket No. 14] is **GRANTED IN PART**. It is further

**ORDERED** that default judgment shall enter in favor of plaintiffs Arlette Clarke and Dylan Clarke and against defendant National Payment Relief, LLC. It is further

**ORDERED** that plaintiffs Arlette Clarke and Dylan Clarke are awarded $500 in statutory damages – $250 apiece – against defendant National Payment Relief, LLC based on defendant's violations of the FDCPA. It is further

**ORDERED** that plaintiffs' request for an evidentiary hearing to determine an amount of actual damages is **DENIED**. It is further

**ORDERED** that, within 14 days of the entry of judgment, plaintiffs may have their costs by filing a bill of costs with the Clerk of the Court. It is further

**ORDERED** that, pursuant to 15 U.S.C. § 1692k(a)(3), within 14 days of the entry of judgment, plaintiffs may file a motion for attorneys' fees. It is further

**ORDERED** that this case is closed.

DATED January 2, 2015.

                                  BY THE COURT:

                                  s/Philip A. Brimmer
                                  PHILIP A. BRIMMER
                                  United States District Judge